Brinkerhoee J.
The amount of the railroad stocks in contest between the parties before us is very large and valuable; and this circumstance, rather than anyintrinsic difficulty in the questions which the case necessarily presents, has given the ease much of temporary interest and importance. As was natural and proper, the case has been argued, by able counsel, at great length, both orally and in print; and many questions, which it is not necessary for us to pass upon in order to decide the case, have been raised and discussed on the hearing. These we have mostly passed over; and we have confined ourselves to two questions, the decision of either of which in favor of the plaintiff, the city of Cleveland, precludes all further question of its right to the relief which it seeks.
The first question is this : Had the commissioners of the city of Cleveland the power to make the contract which they assumed to make with the Cleveland, Zanesville and Cincinnati Railroad Company?
If they had such power, it is to be found in the act of the general assembly which made them commissioners and defines their powei’s. It can be derived from no other source. And in respect to that act I may remark, that it needs only a careful reading of it to show that its draughtsman, whoever he may have been, evidently had a distinct idea of the objects aimed at by the legislation he proposed; and that he understood the significance of language, and knew how to employ it so as to give a clear and definite expression to his ideas. *Now, what was the contract which the commissioners of Cleveland assumed to- make ? It was not a sale for cash in hand, nor for money on terms of credit. It was nothing but an exchange, a swap, of the stock of the Cleveland, Painesville and Ashtabula Railroad, owned by the city of Cleveland, for a larger *244 nominal amount of the stock of the Cleveland, Zanesville and Cincinnati Railroad—the latter guaranteeing that its stock, given in exchange, should, at a given period of time, be worth a certain sum of money in the market. Now, in looking into the act referred to, for power in the commissioners of the city of Cleveland to make this contract for an exchange and barter of stocks, all that we can find from which, with a show of plausibility, such power can be inferred, is the power (sec. 3) “ to sell said shares, or any part thereof, at such time or times as to them may seem expedient, for not less than their par value,” “ and to do whatsoever else may seem necessary to secure and advance the interests of the city in the premisesBut the power to sell is one thing, and the power to barter and exchange is another and a very different thing. “ A sale of a chattel is an exchange thereof for money, but a sale is discriminated in many respects from an exchange in law—an exchange being the giving of one thing, and the receiving of another thing, while a sale is the giving of one thing for that which is the representative of all things.” 1 Parsons on Contracts, 521. And the same distinction is asserted in Story on Sales, sec. 1. And a power to sell does not authorize a barter or exchange. Taylor v. Galloway, 1 Ohio, 232.
And the following clause of the act, giving to the commissioners of Cleveland power “ to do whatsoever else ” they “may deem necessary to secure and advance the interests of the city in the premises,” can not be held to enlarge the circle of the specific powers before conferred. The phrase, “in the premises,” is one of limitation, and is substantially equivalent to, in the things premised, or, in the matters aforesaid. It limits the discretion conferred to the manner of exercising the powers specifically granted.
These conclusions are confirmed by the fact that the statute referred to, does expressly authorize the commissioners “to exchange ” *the shares of stock held by the city, for the outstanding evidences of indebtedness issued by the city in order to raise the means with which to pay up its stock subscriptions in the first place; for it shows that the draughtsman of the act knew and recognized the distinction between a sale and an exchange, and that where he meant an exchange ho said exchange.
The commissioners of the city, then, had no power to make the contract of exchange which they assumed to make; and the powers of the commissioners being derived solely from a public legislative *245 act, those who dealt with them, or who claim under them directly or remotely, were bound to take notice of the extent of those powers; and the city is not estop£>ed to deny the existence of the power assumed. The contract of exchange is void for want of power in the commissioners to make it.
This is conclusive of the case; and we might, with no impropriety, stop here. But the second question considered by the court leads to the same result. The district court find, as a matter of fact, in substance, that the so-called contract for an exchange of stocks, was obtained from the commissioners of the city of Cleveland by false and fraudulent representations made to them, in the course of the negotiation, by one McMillen, acting in behalf of the Cleveland, Zanesville and Cincinnati Railroad Company. McMillen took to himself an assignment of the stocks thus fraudulently acquired.' As against him, the contract was null by reason of hia fraud in obtaining it. He subsequently assigned the stocks to the Bank of Akron, simply as collateral security for a pre-existing indebtedness of McMillen to that bank, and not contracted in any way on the faith of such security. On the principles decided by this court in Roxborough v. Messick, 6 Ohio St. 448, this assignment conferred on the Bank of Akron no better title than McMillen had; and the State Bank of Ohio, succeeding as it does, under the statute, simply to the rights of the now defunct Bank of Akron, stands in its shoes.

Decree for plaintiff.

Scott, C. J., and Day, White, and Welch, JJ., concurred.